THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY NURSING & REHABILITATION CENTER LLC and GARY GOW, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PATRICIA GOW,<br><br>Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, NATIONAL FIRE & MARINE INSURANCE COMPANY ("National Fire"), by and through its attorneys, Jonathan L. Schwartz and Donald Patrick Eckler of Goldberg Segalla LLP, brings this Complaint for Declaratory Judgment against Defendants, COMMUNITY NURSING AND REHABILITATION CENTER LLC ("Community Nursing") and GARY GOW, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PATRICIA GOW, DECEASED ("Gow"), and alleges and states as follows:

### INTRODUCTION

1. National Fire seeks a judicial declaration that it does not have a duty to defend Community Nursing for any claim by Gow and, further, does not have a duty to indemnify Community Nursing for the $3 million default judgment, plus fees and costs, entered in connection with the underlying action filed in the Eighteenth Judicial District, DuPage County, Illinois, captioned *Gow v. Community Nursing & Rehabilitation Center, LLC*, No. 2019-L-001279 ("Underlying Lawsuit").

## JURISDICTION & VENUE

2. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

3. Plaintiff, National Fire, is a corporation organized under the laws of Nebraska with its principal place of business in Omaha, Nebraska.

4. Defendant, Community Nursing, is a limited liability company organized under the laws of Illinois. Its sole managers are Shraga Jeremias and Mark Weldler, each of whom is a citizen of Illinois.

5. Defendant, Gow is a citizen of Illinois and resident of Cook County, Illinois.

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, National Fire, on the one hand, and Defendants, Community Nursing and Gow, on the other hand; and (b) the amount in controversy with regard to the Underlying Lawsuit and the nearly $3.4 million default judgment against Community Nursing well exceeds $75,000.

7. Venue is appropriate under 28 U.S.C. § 1391(b)(1), as Gow is a resident of a county falling within this district's jurisdiction, Community Nursing is an Illinois LLC doing business in this district, the Underlying Lawsuit remains pending in a county falling within this district's jurisdiction, and the insurance policy at issue was issued in this district.

8. An actual justiciable controversy exists between National Fire, on the one hand, and Community Nursing and Gow, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

30975911.v2

**POLICY**

9. National Fire issued to Community Nursing a senior care liability insurance policy, No. NSC100138, for the July 1, 2017, to July 1, 2018 policy period ("Policy"). Coverage under the Policy is subject to a $1,000,000 per event limit and a $3,000,000 aggregate limit. A true and correct copy of the Policy is attached hereto and incorporated herein as **Exhibit A**.

10. National Fire cancelled the Policy, effective May 22, 2018 via endorsement, following Community Nursing's nonpayment of the premium for the Policy.

11. The Policy contains the following relevant Insuring Clause applicable to the Professional Liability Coverage Part, which applies on a claims-made and reported basis:

    A.    PROFESSIONAL LIABILITY

        1.    <u>Claims-Made and Reported</u>:

        If "Claims-Made and Reported" is shown on the Declarations with respect to this Coverage Part, the following provisions apply:

        a.    The **company** will pay on behalf of any **insured** all **loss** and **claims expense**, subject to any applicable Deductible or Self-Insured Retention, and up to the Limits of Liability shown on the Declarations with respect to this Coverage Part, arising from a **health care event** that took place on or after the applicable Retroactive Date shown on the Declarations. Moreover, to be covered under this policy, the **loss** or **claims expense** must arise from:

        (1)    a **claim** that was first made against, and received by, an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within any applicable **extended reporting period**; or

        (2)    a **potential claim** that was first known about or discovered by an **insured** during the **policy period**, and reported to the **company**, in writing, during the **policy period** or within the automatic limited **extended reporting period**.

12. The Policy defines "**claim**" as "an express, written demand upon an **insured** for money or services as compensation for damages, including a suit." The Policy also defines "**potential claim**" as "an **event**, including an incident arising from, or in connection with, that **event**, which an **insured** knows or reasonably should know is likely to result in a **claim**."

13. The Policy contains the following relevant Conditions:

    C.    ASSISTANCE AND COOPERATION

        1.    After any **claim** is made, or any **potential claim** is first discovered, the **insured** shall not contract any expense, voluntarily assume any liability in any situation, nor make or contract any settlement of the **claim** or **potential claim**, except at the **insured's** own cost and responsibility, without the written authorization of the **company**.

        2.    The **company's** duty to defend and pay **loss** for any **claim** or **potential claim** otherwise covered under this policy is strictly conditioned upon all **insureds'** cooperation with the **company** in the investigation, defense, and/or settlement of any matter to which this policy applies. Such cooperation shall include, but is not limited to:

            a.    attendance at any deposition, hearing, or trial, as requested by the **company**;
            b.    assistance in securing and giving evidence;
            c.    obtaining the attendance of witnesses;
            d.    doing nothing to prejudice the **company's** ability to investigate, defend, and/or manage any matter to which this policy applies;

                \* \* \*

    P.    REPORTING REQUIREMENTS

        1.    The **company's** duty to defend and pay **loss** for any **claim** or **potential claim** otherwise covered under this policy is strictly conditioned upon an **authorized insured's** forwarding, as soon as practicable and expressly subject to the reporting requirements of the applicable Insuring Clause, notice of every **claim**, **potential claim**, demand, suit, summons, or legal paper the **insured** receives.

14. The Policy contains the following Exclusion:

    F.     DEFAULT JUDGMENT AND FAILURE TO COOPERATE

        Any **claim** or **potential claim** that the **company** was unable to timely investigate or defend due to the acts or omissions of any **insured**, including any resulting damages from a default judgment.

15. With respect to the Limits of Liability for the Professional Liability Coverage Part, the Policy states:

    A.     PER EVENT LIMIT

        The Per event Limit shown on the Declarations is the most the **company** will pay under this Coverage Part for **loss** … for any **health care event** regardless of the number of:

        1.     insureds who share a Per Event Limit;

        2.     **claims** made or **potential claims** first discovered; or

        3.     persons or organizations making claims or **potential claims**.

16. The Policy defines "**health care event**" as "any **event** in the rendering of, or failure to render, **professional services** that results in injury. All injuries arising out of, or in connection with, the same or related acts or omissions in furnishing **professional services** shall be considered one **health care event**." The Policy then defines "**event**" as "an accident." The Policy specifies that "[a]ll injuries arising out of, or in connection with … 1. the same or related acts or omissions; or 2. the continuous or related exposure to substantially the same harmful conditions … will be considered one **event**."

## UNDERLYING LAWSUIT & BANKRUPTCY PROCEEDINGS

17. On November 15, 2019, Gow filed a complaint in the Underlying Lawsuit ("Underlying Complaint"), alleging two counts against Community Nursing under the Illinois Nursing Home Care Act (210 ILCS 45/1-101 *et seq.*) and the Illinois Wrongful Death Act (740 ILCS 180/1 *et seq.*) for various negligent acts and omissions concerning their care of Patricia Gow in December 2017

and January 2018. The acts and omissions included, but are not limited to, failing to assess Ms. Gow's respiratory status, failing to ensure Ms. Gow received adequate hydration, and failing to have sufficient nursing staff. The Underlying Complaint further alleged that these negligent acts and omissions caused Ms. Gow to suffer from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which hastened her death. A true and correct copy of the Underlying Complaint is attached hereto and incorporated herein as **Exhibit B**.

18. Community Nursing never reported to National Fire the death of Ms. Gow as a **claim**, or a **potential claim**.

19. Prior to commencing the Underlying Lawsuit, Horwitz Horwitz & Associates had sent a letter to Community Nursing on April 12, 2018, requesting its records pertaining to Ms. Gow, even though the letter did not demand any money or services or threaten a lawsuit. A true and correct copy of the April 12, 2018 letter from Clifford W. Horwitz is attached hereto and incorporated herein as **Exhibit C**.

20. A representative of Community Nursing forwarded the April 12, 2018 letter National Fire, on April 16, 2018, albeit with no explanation. A claims representative for National Fire responded that the letter presented insufficient information or detail about an event, at least enough to "form a reasonable basis that this is a potential claim." The claims representative then requested on May 1, 2018 "any information regarding an event you reasonably believe may form the basis for this medical records request and a potential claim." The claims representative concluded by noting that she could not accept this "as a reportable matter" without more information. A true and correct copy of the April 16, 2018 to May 1, 2018 email exchange between Christina Ballester and Steve Jeremias is attached hereto and incorporated herein as **Exhibit D**.

21. No representative of Community Nursing responded to the National Fire claims representative's request by May 25, 2018, so National Fire did not set up a claim file and deemed the matter closed.

22. On February 6, 2020, an attorney for Community Nursing, Jeremias, and Welder filed an appearance in the Underlying Lawsuit, although the attorney never filed a responsive pleading on behalf of Community Nursing.

23. At no point in 2019 or 2020 did Community Nursing report or inform National Fire of the Underlying Lawsuit.

24. On February 27, 2019, Community Nursing initiated Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in a case captioned *In re Community Nursing & Rehabilitation Center LLC*, Case No. 1-05169 ("Bankruptcy Proceeding").

25. Prior to July 2020, Community Nursing did not disclose or otherwise identify in the Bankruptcy Proceeding a claim involving Gow, let alone the Underlying Lawsuit, as a potential liability. Community Nursing also did not declare or identify Gow as an unsecured creditor.

26. On July 13, 2020, the court in the Bankruptcy Proceeding modified the automatic stay of section 362(a) of the Bankruptcy Code – on the motion of Gow – only to the extent of applicable insurance proceeds. *See* July 13, 2020 Order by the U.S. Bankruptcy Court for the Northern District of Illinois in *In Re: Community Nursing & Rehabilitation LLC*, BK No. 19-05160, , a true and correct copy of which is attached hereto and incorporated herein as **Exhibit E**.

27. At no point in 2020 did Community Nursing report or disclose to National Fire that Gow had successfully modified the automatic stay in order to pursue Community Nursing's available insurance proceeds.

28.     On February 17, 2021, the court in the Underlying Lawsuit entered a default judgment against Community Nursing due to Community Nursing's failure to comply with its discovery obligations. Less than one month later, the court entered a judgment of $1 million with respect to the Nursing Home Care Act count of the Underlying Complaint and $2 million with respect to the Wrongful Death count of the Underlying Complaint, plus attorney fees and expenses, totaling $3,339,854.58.

29.     At no point in 2021 did Community Nursing report or disclose to National Fire the default judgment.

30.     On or about August 3, 2021, Gow filed a third-party citation to discover assets with regard to National Fire. Gow's August 10, 2021 service of the citation on National Fire was National Fire's first notice of Gow's claim for wrongful death, the Underlying Lawsuit, and the default judgment.

**COUNT I – NO CLAIM WAS MADE AND REPORTED AND NO POTENTIAL CLAIM WAS KNOWN AND REPORTED DURING THE POLICY PERIOD**

31.     National Fire incorporates by reference paragraphs 1-30 above as if fully stated herein.

32.     For Community Nursing to trigger coverage under the Policy, a "**claim**," as that term is defined by the Policy, must have been made between July 1, 2017 and May 22, 2018. But, no "**claim**," *i.e.*, a demand for money or services as compensation for damages was made by Gow, or any representative of Gow, to Community Nursing prior to November 15, 2019. Further, for Community Nursing to be afforded coverage under the Policy, that "**claim**" must have been reported in writing to National Fire before June 21, 2018, the termination of the Policy's Limited Automatic Extended Reporting Period. But, no "**claim**," *i.e.*, a demand for money or services as compensation for damages in connection with Ms. Gow's death was reported to National Fire prior to August 2021.

33.     Alternatively, for Community Nursing to be afforded coverage under the Policy, it must have known of or discovered a "**potential claim**," as that term is defined by the Policy, involving

Ms. Gow's death prior to May 22, 2018. But, no such "**potential claim**" was known of or discovered by Community Nursing until November 15, 2019. Further, for Community Nursing to be afforded coverage under the Policy, it must have reported in writing such "**potential claim**" to National Fire by June 21, 2018, the termination of the Policy's Limited Automatic Extended Reporting Period. But, no such "**potential claim**" was ever reported to National Fire. In particular, the April 16, 2018 forwarding of a records request from an attorney, without more, is insufficient to trigger the Policy's coverage for a "**potential claim**." This is especially so after Community Nursing chose to disregard the National Fire claims representative's May 1, 2018 request that she be provided additional information about an "**event**" concerning Gow's death that Community Nursing reasonably believed may form the basis of a "**potential claim**."

34. For these reasons, no coverage is available to Community Nursing under the Policy in connection with Ms. Gow's death, the Underlying Lawsuit, and the default judgment. In turn, National Fire has no duty to defend or indemnify Community Nursing in connection therewith.

### COUNT II – COMMUNITY NURSING NEVER REPORTED THE UNDERLYING LAWSUIT

35. National Fire incorporates by reference paragraphs 1-30 above as if fully stated herein.

36. Pursuant to Condition P. of the Policy, Community Nursing was required to promptly report to National Fire the existence of the Underlying Lawsuit and forward all claims, summonses, and legal papers. But, Community Nursing failed to report, notify, or inform National Fire of the Underlying Lawsuit until after a default judgment had been entered.

37. The failure of Community Nursing to timely report the Underlying Lawsuit caused great prejudice to the interests and rights of National Fire.

38. Community Nursing's failure to provide timely reporting and notice breached a condition precedent to coverage under the Policy, thereby terminating any duty or obligation National Fire arguably may have had to Community Nursing in connection with the Underlying Lawsuit.

**COUNT III – THE DEFAULT JUDGMENT EXCLUSION BARS ALL COVERAGE**

39. National Fire incorporates by reference paragraphs 1-30 above as if fully stated herein.

40. Exclusion F. of the Policy applies to **claims** or **potential claims** National Fire could not timely investigate or defend due to Community Nursing's misconduct, as well as any default judgment and associated damages resulting therefrom.

41. National Fire's first notice of the Underlying Lawsuit was the August 2021 citation to discover assets, which Gow issued after securing a near $3.4 million default judgment against Community Nursing.

42. National Fire has no duty to defend or indemnify Community Nursing because Community Nursing's failure to timely report the Underlying Lawsuit inhibited or precluded entirely National Fire's ability to effectively investigate or defend Community Nursing against Gow's assertions of liability. Plus, National Fire has no duty to indemnify Community Nursing against the default judgment because that judgment was reached as a result of Community Nursing's inaction and without National Fire's knowledge or awareness of the Underlying Lawsuit.

**COUNT IV – COMMUNITY NURSING'S INACTION MATERIALLY BREACHED THE POLICY'S COOPERATION CLAUSE**

43. National Fire incorporates by reference paragraphs 1-30 as if fully stated herein.

44. Pursuant to Condition C. of the Policy, coverage is strictly conditioned on Community Nursing's cooperation with National Fire in the investigation and defense of any matter to which the Policy applies. This requires that Community Nursing "do[ ] nothing to prejudice the **company's** ability to investigate, defend, and/or manage any matter to which this policy applies."

45. Community Nursing materially breached this Condition by prejudicing National Fire's ability to investigate, defend, and/or settle the Underlying Lawsuit, as Community Nursing took no steps to defend itself in the Underlying Lawsuit and instead allowed a default judgment to be entered against it.

46. In turn, National Fire has no duty to defend or indemnify Community Nursing in connection with the Underlying Lawsuit or Gow's allegations of wrongdoing giving rise thereto.

**COUNT V – GOW's VOID DEFAULT JUDGMENT AS A RESULT OF SECURING A JUDGMENT IN EXCESS OF THE APPLICABLE INSURANCE PROCEEDS**

47. National Fire incorporates by reference paragraphs 1-30 above as if fully stated herein.

48. The death of Ms. Gow and the related acts and omissions by Community Nursing over a course of approximately 50 days that led to her death are a single "**event**" under the Policy, as that term is defined.

49. The maximum available insurance proceeds for the Underlying Lawsuit thus is the Policy's $1 million Per Event Limit.

49. Although Gow sought a modification of the automatic stay "to the extent of applicable insurance proceeds," Gow pursued a judgment millions in excess of the applicable insurance proceeds.

50. By violating the bankruptcy court's July 13, 2020 Order, the default judgment against Community Nursing in the Underlying Lawsuit is void. In turn, National Fire cannot have a duty to indemnify Community Nursing in connection with Gow's $3,339,854.58 default judgment.

WHEREFORE, Plaintiff, NATIONAL FIRE & MARINE INSURANCE COMPANY, respectfully requests this Court to declare and adjudge the controversy as follows:

A. National Fire has no duty to defend Community Nursing under the Policy with regard to the Underlying Lawsuit;

B. National Fire has no duty to indemnity Community Nursing under the Policy with regard to the Underlying Lawsuit, including the default judgment entered against Community Nursing therein; and

C. Grant any other relief this Court deems just and equitable under the circumstances, including the award of costs and fees.

DATED:  September 2, 2021 	Respectfully submitted,

                                               **GOLDBERG SEGALLA, LLP**

                                               By: /s/Jonathan L. Schwartz
                                               Attorney for National Fire & Marine Insurance Company

Jonathan L. Schwartz
Donald Patrick Eckler
GOLDBERG SEGALLA LLP
*Mailing Address:* P.O. Box 957, Buffalo, NY 14201
*Physical Address:* 222 W. Adams Street, Suite 2250, Chicago, IL 60606
Tel: (312) 572-8411
jschwartz@goldbergsegalla.com
deckler@goldbergsegalla.com