# EXHIBIT B

29670

STATE OF ILLINOIS        )
                        ) SS:
COUNTY OF DUPAGE    )

## IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

| | | |
|---|---|---|
| GARY GOW, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PATRICIA GOW, DECEASED, | ) ) ) ) | Chris Kachiroubas<br>e-filed in the 18th Judicial Circuit Court<br>DuPage County<br>ENVELOPE: 7377285<br>2019L001279<br>FILEDATE: 11/15/2019 8:37 AM<br>Date Submitted: 11/15/2019 8:37 AM<br>Date Accepted: 11/15/2019 9:56 AM<br>JK |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. |
| COMMUNITY NURSING & REHABILITATION CENTER, LLC; STEVE JEREMIAS; MARK WELDLER, | ) ) ) ) ) ) ) ) | **2019L001279** |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT AT LAW

NOW COMES the Plaintiff GARY GOW, AS INDEPENDENT ADMINISTRATOR FOR THE ESTATE OF PATRICIA GOW (DECEASED), by his attorneys HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants Community Nursing & Rehabilitation Center, LLC; Steve Jeremias; and Mark Weldler, alleges as follows:

## COUNT I – COMMUNITY NURSING & REHABILITATION CENTER, LLC (ILLINOIS NURSING HOME CARE ACT)

1. This count is brought pursuant to the Illinois Nursing Home Care Act, 210 ILCS 45/1-101 et seq.

2. That on or about January 21, 2018, and prior thereto, the Defendant, Community Nursing & Rehabilitation Center, LLC (hereinafter referred to as "Community Nursing & Rehab"), owned, possessed, operated, managed, maintained, and controlled and/or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through their agents, servants and employees, certain premises which included a certain facility and facility staff located at approximately 1136 N. Mill Street, City of Naperville, County of Dupage, and State of Illinois.

3.  At all times relevant hereto, Defendant Community Nursing & Rehab was licensed as a skilled care facility.

4.  At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicare Residents.

5.  At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicaid Residents.

6.  At all times relevant hereto, Defendant Community Nursing & Rehab agreed that it would comply with all applicable federal and state laws, rules, and regulations governing a "nursing facility".

7.  At all times relevant hereto, Defendant Community Nursing & Rehab was subject to the requirements and standards set forth at 42 C.F.R. §483.

8.  At all times relevant hereto, Defendant Community Nursing & Rehab understood that it was subject to the requirements set forth at 42 C.F.R. §483.

9.  At all times relevant hereto there existed a statute known as the Illinois Nursing Home Care Act, 210 ILCS 45/1-101 et seq. (hereafter "the Act")

10. At all times relevant hereto, Defendant Community Nursing & Rehab was required to comply with the Act.

11. At all times relevant hereto, Defendant Community Nursing & Rehab understood that it was required to comply with the Act.

12. At all times relevant hereto, 210 ILCS 45/3-801 provided: "The Department [of Public Health] shall have the power to adopt rules and regulations to carry out the purpose of this Act."

13. At all times relevant hereto, Defendant Community Nursing & Rehab was required to comply with the rules and regulations of the Illinois Department of Public Health.

14. At all times relevant hereto, Defendant Community Nursing & Rehab understood that it was required to comply with the rules and regulations of the Illinois Department of Public Health.

15. On or about November 30, 2017, Patricia Gow was admitted as a resident to Defendant Community Nursing & Rehab.

16. On or about November 30, 2017, Defendant Community Nursing & Rehab accepted Patricia Gow as a resident.

17. Patricia Gow relied on Defendant Community Nursing & Rehab for adequate and proper nursing and personal care.

18. Defendant Community Nursing & Rehab knew or should have known that Patricia Gow relied on it for adequate and proper nursing and personal care.

19. Upon admission, Patricia Gow had a medical history that included atrial fibrillation, mitral valve insufficiency, pulmonary embolism, pulmonary hypertension, hypertension, stage 3 chronic kidney disease, COPD, emphysema, osteoarthritis, status post bilateral total knee arthroplasty, anemia, sigmoid colon diverticulosis, previous cholecystectomy, history of previous resection of skin cancer, biventricular systolic dysfunction with history of acute and chronic biventricular systolic heart failure.

20. Defendant Community Nursing & Rehab knew or should have known of Patricia Gow's medical history when it accepted her as a resident to the facility, as well as during her residency at the Defendant's facility.

21. At all relevant times, Defendant assessed Patricia Gow as being at risk for abuse or neglect related to her physical, medical, cognitive, or respiratory status.

22. At all relevant times, Defendant assessed Patricia Gow as being at risk for potential alteration in communication related to her respiratory status.

23. At all relevant times, Defendant assessed Patricia Gow as requiring oxygen as ordered, trach care each shift, suctioning as needed, and nebulizer treatments and other medications as ordered related to having a tracheostomy.

24. At all relevant times, Defendant knew or should have known that Patricia Gow was at risk of developing mucus plugging.

25. At all relevant times, Defendant knew or should have known that Patricia Gow required frequent suctioning.

26. At various time between December 1, 2017 and January 21, 2018, Defendant failed to provide Patricia Gow with medications as ordered, including acetylcysteine, albuterol sulfate, budesonide suspension, and Hyper-sal.

27. On or about December 12, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

28. On or about December 18, 2017, Patricia Gow was decannulated.

29. On or about December 18, 2017, one of Defendant's CNAs found Patricia Gow short of breath and coughing thick green/tan secretions from her trach. At this time, she was suctioned, Ambu-bagged, and re-cannulated.

30. On or about December 18, 2017, Patricia Gow developed respiratory distress due to mucous secretions occluding her trachea after decannulation.

31. On or about December 19, 2017, Patricia Gow experienced labored breathing and dropping O2 saturations. At this time, she was bagged again and her trach was upsized to Shilley #6, cuffed.

32. On or about December 22, 2017, Patricia Gow was diagnosed with bilateral pneumonia and placed on Augmentin.

33. On or about December 27, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

34. On or about December 28, 2017, Patricia Gow was desaturating. At this time, she was bagged and suctioned with a small amount of thick secretions.

35. On or about December 28, 2017, Patricia Gow experienced acute dyspnea with hypoxemia due to mucous plugging, and her trach tube was changed to a cuffed tube due to continued labored breathing.

36. On or about December 28, 2017, Patricia Gow experienced another episode of respiratory distress including desaturation during bedside care. At this time, she was bagged and suctioned.

37. On or about December 29, 2017, Patricia Gow experienced labored breathing. At this time, she was bagged and suctioned with tan/yellow thick secretions.

38. On or about December 30, 2017, Patricia Gow was transferred via ambulance to Edward Hospital related to thick secretions and recent episodes of desaturation, where she was diagnosed as suffering from dyspnea/acute on chronic hypoxic respiratory failure due to mucus plugging and fluid overload.

39. On or about January 6, 2018, Patricia Gow was readmitted to Defendant's facility.

40. On or about January 12, 2018, Patricia Gow was diagnosed as suffering from right acute parotitis/sialadenitis of right parotid gland.

41. On or about January 15, 2018, Patricia Gow's trach was downsized to Bivona #4, cuffless.

42. On or about January 16, 2018, Defendant observed Patricia Gow with copious thin white, blood-tinged secretions from her trach.

43. Between January 16, 2018 and January 21, 2018, Defendant did not note any issues with Patricia Gow's trach and/or respiratory status.

44. On or about January 21, 2018, Patricia Gow was found pulseless at Defendant's facility and CPR was initiated.

45. On or about January 21, 2018, Patricia Gow was transferred via ambulance to Edward Hospital.

46. On February 1, 2018, Patricia Gow died.

47. Defendant had a duty to implement care plans to address Patricia Gow's risk for respiratory distress.

48. Defendant had a duty to provide Patricia Gow with frequent suctioning.

49. Defendant had a duty to assess Patricia Gow's respiratory status.

50. Defendant had a duty to monitor Patricia Gow for signs and symptoms of respiratory distress.

51. Defendant had a duty to monitor Patricia Gow's trach tube for signs of mucous plugging.

52. Defendant had a duty to ensure Patricia Gow received adequate hydration.

53. Defendant had a duty to update Patricia Gow's care plan when it noted a significant change in her condition.

54. Defendant had a duty to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions.

55. Defendant had a duty to ensure Patricia Gow was properly and accurately assessed while she was a resident.

56. Defendant had a duty to conduct a functional capacity assessment of Patricia Gow initially and periodically.

57. Defendant had a duty to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

58. Defendant had a duty to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

59. Defendant had a duty to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs.

60. Defendant had a duty to ensure Patricia Gow was not subject to neglect while she was a resident.

61. Defendant had a duty to provide Patricia Gow with adequate and properly supervised nursing and personal care.

62. Defendant had a duty to have written policies and procedures governing all services provided by the facility.

63. Defendant had a duty to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow.

64. Defendant had a duty to notify Patricia Gow's physician of any accident, injury, or significant change in her condition.

65. Defendant had a duty to administer Patricia Gow's medications and/or treatments properly.

66. Defendant had a duty to follow the orders of Patricia Gow's physician.

67. Defendant had a duty to provide sufficient staff to meet the needs of its residents, including Patricia Gow.

68. Defendant had a duty to keep accurate records concerning the care and treatment of Patricia Gow.

69. Notwithstanding its duties during the period of Patricia Gow's residency at Defendant Community Nursing and Rehab's skilled nursing facility, the Defendant Community Nursing and Rehab, by its officers, agents, employees, and staff, violated the provisions of 210 ILCS 45/2-107 when it permitted conditions to exist thereby allowing one or more of the following negligent acts and/or omissions and/or violations of the standard of care:

    a. Failed to implement care plans to address Patricia Gow's risk for respiratory distress;

    b. Failed to provide Patricia Gow with frequent suctioning;

    c. Failed to assess Patricia Gow's respiratory status;

    d. Failed to monitor Patricia Gow for signs and symptoms of respiratory distress;

    e. Failed to monitor Patricia Gow's trach tube for signs of mucus plugging;

    f. Failed to ensure Patricia Gow received adequate hydration;
    g. Failed to update Patricia Gow's care plan when it noted a significant change in her condition;

    h. Failed to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions;

i.   Failed to ensure Patricia Gow was properly and accurately assessed while she was a resident;

j.   Failed to to conduct a functional capacity assessment of Patricia Gow initially and periodically;

k.   Failed to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

l.   Failed to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

m.   Failed to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs;

n.   Failed to ensure Patricia Gow was not subject to neglect while she was a resident;

o.   Failed to provide Patricia Gow with adequate and properly supervised nursing and personal care;

p.   Failed to have written policies and procedures governing all services provided by the facility;

q.   Failed to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow;

r.   Failed to notify Patricia Gow's physician of any accident, injury, or significant change in her condition;

s.   Failed to administer Patricia Gow's medications and/or treatments properly;

t.   Failed to follow the orders of Patricia Gow's physician;

u.   Failed to provide sufficient staff to meet the needs of its residents, including Patricia Gow;

v.   Failed to keep accurate records concerning the care and treatment of Patricia Gow;

w.   Lacked policies and procedures to address the proper intervention and care for a resident at risk for mucus plugging;

x.   Lacked policies and procedures to address to proper intervention and care for a resident at risk for respiratory distress;

y.   Facility administration failed to effectively administer the facility in order for Patricia Gow to attain and/or maintain her highest practicable well-being;

    z.  Facility administration failed to adequately monitor, coordinate, and evaluate Patricia Gow's care;

    aa.  Facility administration failed to properly manage Patricia Gow's care.

70. As a direct and proximate result of one or more of the Defendant Community Nursing and Rehab's negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home, Patricia Gow suffered from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which subsequently hastened her death.

71. As a direct and proximate result of one or more of the Defendant Community Nursing and Rehab's negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home, Patricia Gow suffered pecuniary and personal loss including but not limited to disability, pain and suffering, loss of normal life, and expenses for medical care.

WHEREFORE, the Plaintiff, Gary Gow, as Independent Administrator of the Estate of Patricia Gow, deceased, prays for judgment against the Defendant, Community Nursing and Rehab, in an amount sufficient to satisfy jurisdictional requirements and other relief the Court deems just and proper, including all relief authorized by Section 3-602 of the Nursing Home Care Act, and costs of suit. Plaintiff demands trial by jury.

## COUNT II – COMMUNITY NURSING & REHABILITATION CENTER, LLC (WRONGFUL DEATH)

1. Plaintiff brings this Count pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1.

2. That on or about January 21, 2018, and prior thereto, the Defendant, Community Nursing & Rehabilitation Center, LLC (hereinafter referred to as "Community Nursing & Rehab"), owned, possessed, operated, managed, maintained, and controlled and/or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through their agents, servants and employees, certain premises which included a certain facility and facility staff located at approximately 1136 N. Mill Street, City of Naperville, County of Dupage, and State of Illinois.

3. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed as a skilled care facility.

4. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicare Residents.

5. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicaid Residents.

6.  At all times relevant hereto, Defendant Community Nursing & Rehab agreed that it would comply with all applicable federal and state laws, rules, and regulations governing a "nursing facility".

7.  On or about November 30, 2017, Patricia Gow was admitted as a resident to Defendant Community Nursing & Rehab.

8.  On or about November 30, 2017, Defendant Community Nursing & Rehab accepted Patricia Gow as a resident.

9.  Patricia Gow relied on Defendant Community Nursing & Rehab for adequate and proper nursing and personal care.

10. Defendant Community Nursing & Rehab knew or should have known that Patricia Gow relied on it for adequate and proper nursing and personal care.

11. Upon admission, Patricia Gow had a medical history that included atrial fibrillation, mitral valve insufficiency, pulmonary embolism, pulmonary hypertension, hypertension, stage 3 chronic kidney disease, COPD, emphysema, osteoarthritis, status post bilateral total knee arthroplasty, anemia, sigmoid colon diverticulosis, previous cholecystectomy, history of previous resection of skin cancer, biventricular systolic dysfunction with history of acute and chronic biventricular systolic heart failure.

12. Defendant Community Nursing & Rehab knew or should have known of Patricia Gow's medical history when it accepted her as a resident to the facility, as well as during her residency at the Defendant's facility.

13. At all relevant times, Defendant assessed Patricia Gow as being at risk for abuse or neglect related to her physical, medical, cognitive, or respiratory status.

14. At all relevant times, Defendant assessed Patricia Gow as being at risk for potential alteration in communication related to her respiratory status.

15. At all relevant times, Defendant assessed Patricia Gow as requiring oxygen as ordered, trach care each shift, suctioning as needed, and nebulizer treatments and other medications as ordered related to having a tracheostomy.

16. At all relevant times, Defendant knew or should have known that Patricia Gow was at risk of developing mucus plugging.

17. At all relevant times, Defendant knew or should have known that Patricia Gow required frequent suctioning.

18. At various time between December 1, 2017 and January 21, 2018, Defendant failed to provide Patricia Gow with medications as ordered, including acetylcysteine, albuterol sulfate, budesonide suspension, and Hyper-sal.

19. On or about December 12, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

20. On or about December 18, 2017, Patricia Gow was decannulated.

21. On or about December 18, 2017, one of Defendant's CNAs found Patricia Gow short of breath and coughing thick green/tan secretions from her trach. At this time, she was suctioned, Ambu-bagged, and re-cannulated.

22. On or about December 18, 2017, Patricia Gow developed respiratory distress due to mucous secretions occluding her trachea after decannulation.

23. On or about December 19, 2017, Patricia Gow experienced labored breathing and dropping O2 saturations. At this time, she was bagged again and her trach was upsized to Shilley #6, cuffed.

24. On or about December 22, 2017, Patricia Gow was diagnosed with bilateral pneumonia and placed on Augmentin.

25. On or about December 27, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

26. On or about December 28, 2017, Patricia Gow was desaturating. At this time, she was bagged and suctioned with a small amount of thick secretions.

27. On or about December 28, 2017, Patricia Gow experienced acute dyspnea with hypoxemia due to mucous plugging, and her trach tube was changed to a cuffed tube due to continued labored breathing.

28. On or about December 28, 2017, Patricia Gow experienced another episode of respiratory distress including desaturation during bedside care. At this time, she was bagged and suctioned.

29. On or about December 29, 2017, Patricia Gow experienced labored breathing. At this time, she was bagged and suctioned with tan/yellow thick secretions.

30. On or about December 30, 2017, Patricia Gow was transferred via ambulance to Edward Hospital related to thick secretions and recent episodes of desaturation, where she was diagnosed as suffering from dyspnea/acute on chronic hypoxic respiratory failure due to mucus plugging and fluid overload.

31. On or about January 6, 2018, Patricia Gow was readmitted to Defendant's facility.

32. On or about January 12, 2018, Patricia Gow was diagnosed as suffering from right acute parotitis/sialadenitis of right parotid gland.

33. On or about January 15, 2018, Patricia Gow's trach was downsized to Bivona #4, cuffless.

34. On or about January 16, 2018, Defendant observed Patricia Gow with copious thin white, blood-tinged secretions from her trach.

35. Between January 16, 2018 and January 21, 2018, Defendant did not note any issues with Patricia Gow's trach and/or respiratory status.

36. On or about January 21, 2018, Patricia Gow was found pulseless at Defendant's facility and CPR was initiated.

37. On or about January 21, 2018, Patricia Gow was transferred via ambulance to Edward Hospital.

38. On February 1, 2018, Patricia Gow died.

39. Defendant had a duty to implement care plans to address Patricia Gow's risk for respiratory distress.

40. Defendant had a duty to provide Patricia Gow with frequent suctioning.

41. Defendant had a duty to assess Patricia Gow's respiratory status.

42. Defendant had a duty to monitor Patricia Gow for signs and symptoms of respiratory distress.

43. Defendant had a duty to monitor Patricia Gow's trach tube for signs of mucous plugging.

44. Defendant had a duty to ensure Patricia Gow received adequate hydration.

45. Defendant had a duty to update Patricia Gow's care plan when it noted a significant change in her condition.

46. Defendant had a duty to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions.

47. Defendant had a duty to ensure Patricia Gow was properly and accurately assessed while she was a resident.

48. Defendant had a duty to conduct a functional capacity assessment of Patricia Gow initially and periodically.

49. Defendant had a duty to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

50. Defendant had a duty to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

51. Defendant had a duty to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs.

52. Defendant had a duty to ensure Patricia Gow was not subject to neglect while she was a resident.

53. Defendant had a duty to provide Patricia Gow with adequate and properly supervised nursing and personal care.

54. Defendant had a duty to have written policies and procedures governing all services provided by the facility.

55. Defendant had a duty to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow.

56. Defendant had a duty to notify Patricia Gow's physician of any accident, injury, or significant change in her condition.

57. Defendant had a duty to administer Patricia Gow's medications and/or treatments properly.

58. Defendant had a duty to follow the orders of Patricia Gow's physician.

59. Defendant had a duty to provide sufficient staff to meet the needs of its residents, including Patricia Gow.

60. Defendant had a duty to keep accurate records concerning the care and treatment of Patricia Gow.

61. Notwithstanding its duties during the period of Patricia Gow's residency at Defendant Community Nursing and Rehab's skilled nursing facility, the Defendant Community Nursing and Rehab, by its officers, agents, employees, and staff, violated the provisions of 210 ILCS 45/2-107 when it permitted conditions to exist thereby allowing one or more of the following negligent acts and/or omissions and/or violations of the standard of care:

    a. Failed to implement care plans to address Patricia Gow's risk for respiratory distress;

    b. Failed to provide Patricia Gow with frequent suctioning;

    c. Failed to assess Patricia Gow's respiratory status;

    d. Failed to monitor Patricia Gow for signs and symptoms of respiratory distress;

e.  Failed to monitor Patricia Gow's trach tube for signs of mucus plugging;

f.  Failed to ensure Patricia Gow received adequate hydration;

g.  Failed to update Patricia Gow's care plan when it noted a significant change in her condition;

h.  Failed to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions;

i.  Failed to ensure Patricia Gow was properly and accurately assessed while she was a resident;

j.  Failed to to conduct a functional capacity assessment of Patricia Gow initially and periodically;

k.  Failed to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

l.  Failed to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

m.  Failed to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs;

n.  Failed to ensure Patricia Gow was not subject to neglect while she was a resident;

o.  Failed to provide Patricia Gow with adequate and properly supervised nursing and personal care;

p.  Failed to have written policies and procedures governing all services provided by the facility;

q.  Failed to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow;

r.  Failed to notify Patricia Gow's physician of any accident, injury, or significant change in her condition;

s.  Failed to administer Patricia Gow's medications and/or treatments properly;

t.  Failed to follow the orders of Patricia Gow's physician;

u.  Failed to provide sufficient staff to meet the needs of its residents, including Patricia Gow;

v.  Failed to keep accurate records concerning the care and treatment of Patricia Gow;

    w.  Lacked policies and procedures to address the proper intervention and care for a resident at risk for mucus plugging;

    x.  Lacked policies and procedures to address to proper intervention and care for a resident at risk for respiratory distress;

    y.  Facility administration failed to effectively administer the facility in order for Patricia Gow to attain and/or maintain her highest practicable well-being;

    z.  Facility administration failed to adequately monitor, coordinate, and evaluate Patricia Gow's care;

    aa.  Facility administration failed to properly manage Patricia Gow's care.

62. Patricia Gow's next of kin are as follows:
Gary Gow, adult son
Walter Gow, adult son
David Gow, adult son
Alan Gow, adult son

63. As a direct and proximate result of one or more of the Defendant Community Nursing and Rehab's negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home, Patricia Gow suffered from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which subsequently caused and/or contributed to her death.

64. As a direct and proximate result thereof, Patricia Gow's next of kin suffered great losses of pecuniary and personal nature, including the loss of companionship and society as a result of Patricia Gow's death.

WHEREFORE, the Plaintiff, Gary Gow, as Independent Administrator of the Estate of Patricia Gow, deceased, prays for judgment against the Defendant, Community Nursing and Rehab, in an amount sufficient to satisfy jurisdictional requirements and other relief the Court deems just and proper. Plaintiff demands trial by jury.

## COUNT III—STEVE JEREMIAS
## (NEGLIGENCE)

1. That on or about January 21, 2018, and prior thereto, the Defendant, Community Nursing & Rehabilitation Center, LLC (hereinafter referred to as "Community Nursing & Rehab"), owned, possessed, operated, managed, maintained, and controlled and/or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through their agents, servants and employees, certain premises which included a certain facility and facility staff located at approximately 1136 N. Mill Street, City of Naperville, County of Dupage, and State of Illinois.

2.  At all times relevant hereto, Defendant Community Nursing & Rehab was licensed as a skilled care facility.

3.  At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicare Residents.

4.  At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicaid Residents.

5.  At all times relevant hereto, Defendant Community Nursing & Rehab agreed that it would comply with all applicable federal and state laws, rules, and regulations governing a "nursing facility".

6.  On or about November 30, 2017, Patricia Gow was admitted as a resident to Defendant Community Nursing & Rehab.

7.  On or about November 30, 2017, Defendant Community Nursing & Rehab accepted Patricia Gow as a resident.

8.  Patricia Gow relied on Defendant Community Nursing & Rehab for adequate and proper nursing and personal care.

9.  Defendant Community Nursing & Rehab knew or should have known that Patricia Gow relied on it for adequate and proper nursing and personal care.

10. Upon admission, Patricia Gow had a medical history that included atrial fibrillation, mitral valve insufficiency, pulmonary embolism, pulmonary hypertension, hypertension, stage 3 chronic kidney disease, COPD, emphysema, osteoarthritis, status post bilateral total knee arthroplasty, anemia, sigmoid colon diverticulosis, previous cholecystectomy, history of previous resection of skin cancer, biventricular systolic dysfunction with history of acute and chronic biventricular systolic heart failure.

11. Defendant Community Nursing & Rehab knew or should have known of Patricia Gow's medical history when it accepted her as a resident to the facility, as well as during her residency at the Defendant's facility.

12. At all relevant times, Defendant assessed Patricia Gow as being at risk for abuse or neglect related to her physical, medical, cognitive, or respiratory status.

13. At all relevant times, Defendant assessed Patricia Gow as being at risk for potential alteration in communication related to her respiratory status.

14. At all relevant times, Defendant assessed Patricia Gow as requiring oxygen as ordered, trach care each shift, suctioning as needed, and nebulizer treatments and other medications as ordered related to having a tracheostomy.

15. At all relevant times, Defendant knew or should have known that Patricia Gow was at risk of developing mucus plugging.

16. At all relevant times, Defendant knew or should have known that Patricia Gow required frequent suctioning.

17. At various time between December 1, 2017 and January 21, 2018, Defendant failed to provide Patricia Gow with medications as ordered, including acetylcysteine, albuterol sulfate, budesonide suspension, and Hyper-sal.

18. On or about December 12, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

19. On or about December 18, 2017, Patricia Gow was decannulated.

20. On or about December 18, 2017, one of Defendant's CNAs found Patricia Gow short of breath and coughing thick green/tan secretions from her trach. At this time, she was suctioned, Ambu-bagged, and re-cannulated.

21. On or about December 18, 2017, Patricia Gow developed respiratory distress due to mucous secretions occluding her trachea after decannulation.

22. On or about December 19, 2017, Patricia Gow experienced labored breathing and dropping O2 saturations. At this time, she was bagged again and her trach was upsized to Shilley #6, cuffed.

23. On or about December 22, 2017, Patricia Gow was diagnosed with bilateral pneumonia and placed on Augmentin.

24. On or about December 27, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

25. On or about December 28, 2017, Patricia Gow was desaturating. At this time, she was bagged and suctioned with a small amount of thick secretions.

26. On or about December 28, 2017, Patricia Gow experienced acute dyspnea with hypoxemia due to mucous plugging, and her trach tube was changed to a cuffed tube due to continued labored breathing.

27. On or about December 28, 2017, Patricia Gow experienced another episode of respiratory distress including desaturation during bedside care. At this time, she was bagged and suctioned.

28. On or about December 29, 2017, Patricia Gow experienced labored breathing. At this time, she was bagged and suctioned with tan/yellow thick secretions.

29. On or about December 30, 2017, Patricia Gow was transferred via ambulance to Edward Hospital related to thick secretions and recent episodes of desaturation, where she was diagnosed as suffering from dyspnea/acute on chronic hypoxic respiratory failure due to mucus plugging and fluid overload.

30. On or about January 6, 2018, Patricia Gow was readmitted to Defendant's facility.

31. On or about January 12, 2018, Patricia Gow was diagnosed as suffering from right acute parotitis/sialadenitis of right parotid gland.

32. On or about January 15, 2018, Patricia Gow's trach was downsized to Bivona #4, cuffless.

33. On or about January 16, 2018, Defendant observed Patricia Gow with copious thin white, blood-tinged secretions from her trach.

34. Between January 16, 2018 and January 21, 2018, Defendant did not note any issues with Patricia Gow's trach and/or respiratory status.

35. On or about January 21, 2018, Patricia Gow was found pulseless at Defendant's facility and CPR was initiated.

36. On or about January 21, 2018, Patricia Gow was transferred via ambulance to Edward Hospital.

37. On February 1, 2018, Patricia Gow died.

38. Defendant had a duty to implement care plans to address Patricia Gow's risk for respiratory distress.

39. Defendant had a duty to provide Patricia Gow with frequent suctioning.

40. Defendant had a duty to assess Patricia Gow's respiratory status.

41. Defendant had a duty to monitor Patricia Gow for signs and symptoms of respiratory distress.

42. Defendant had a duty to monitor Patricia Gow's trach tube for signs of mucous plugging.

43. Defendant had a duty to ensure Patricia Gow received adequate hydration.

44. Defendant had a duty to update Patricia Gow's care plan when it noted a significant change in her condition.

45. Defendant had a duty to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions.

46. Defendant had a duty to ensure Patricia Gow was properly and accurately assessed while she was a resident.

47. Defendant had a duty to conduct a functional capacity assessment of Patricia Gow initially and periodically.

48. Defendant had a duty to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

49. Defendant had a duty to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

50. Defendant had a duty to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs.

51. Defendant had a duty to ensure Patricia Gow was not subject to neglect while she was a resident.

52. Defendant had a duty to provide Patricia Gow with adequate and properly supervised nursing and personal care.

53. Defendant had a duty to have written policies and procedures governing all services provided by the facility.

54. Defendant had a duty to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow.

55. Defendant had a duty to notify Patricia Gow's physician of any accident, injury, or significant change in her condition.

56. Defendant had a duty to administer Patricia Gow's medications and/or treatments properly.

57. Defendant had a duty to follow the orders of Patricia Gow's physician.

58. Defendant had a duty to provide sufficient staff to meet the needs of its residents, including Patricia Gow.

59. Defendant had a duty to keep accurate records concerning the care and treatment of Patricia Gow.

60. Notwithstanding its duties during the period of Patricia Gow's residency at Defendant Community Nursing and Rehab's skilled nursing facility, the Defendant Steve Jeremias, by its officers, agents, employees, and staff, violated the provisions of 210 ILCS 45/2-107 when it permitted conditions to exist thereby allowing one or more of the following negligent acts and/or omissions and/or violations of the standard of care:

a. Failed to implement care plans to address Patricia Gow's risk for respiratory distress;

b. Failed to provide Patricia Gow with frequent suctioning;

c. Failed to assess Patricia Gow's respiratory status;

d. Failed to monitor Patricia Gow for signs and symptoms of respiratory distress;

e. Failed to monitor Patricia Gow's trach tube for signs of mucus plugging;

f. Failed to ensure Patricia Gow received adequate hydration;

g. Failed to update Patricia Gow's care plan when it noted a significant change in her condition;

h. Failed to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions;

i. Failed to ensure Patricia Gow was properly and accurately assessed while she was a resident;

j. Failed to to conduct a functional capacity assessment of Patricia Gow initially and periodically;

k. Failed to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

l. Failed to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

m. Failed to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs;

n. Failed to ensure Patricia Gow was not subject to neglect while she was a resident;

o. Failed to provide Patricia Gow with adequate and properly supervised nursing and personal care;

p. Failed to have written policies and procedures governing all services provided by the facility;

q. Failed to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow;

r. Failed to notify Patricia Gow's physician of any accident, injury, or significant change in her condition;

    s.    Failed to administer Patricia Gow's medications and/or treatments properly;

    t.    Failed to follow the orders of Patricia Gow's physician;

    u.    Failed to provide sufficient staff to meet the needs of its residents, including Patricia Gow;

    v.    Failed to keep accurate records concerning the care and treatment of Patricia Gow;

    w.    Lacked policies and procedures to address the proper intervention and care for a resident at risk for mucus plugging;

    x.    Lacked policies and procedures to address to proper intervention and care for a resident at risk for respiratory distress;

    y.    Facility administration failed to effectively administer the facility in order for Patricia Gow to attain and/or maintain her highest practicable well-being;

    z.    Facility administration failed to adequately monitor, coordinate, and evaluate Patricia Gow's care;

    aa.    Facility administration failed to properly manage Patricia Gow's care.

61. As a direct and proximate result of one or more of the Defendant Steve Jeremias' negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home owner and/or operator, Patricia Gow suffered from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which subsequently hastened her death.

62. As a direct and proximate result of one or more of the Defendant Steve Jeremias' negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home owner and/or operator, Patricia Gow suffered pecuniary and personal loss including but not limited to disability, pain and suffering, loss of normal life, and expenses for medical care.

WHEREFORE, the Plaintiff, Gary Gow, as Independent Administrator of the Estate of Patricia Gow, deceased, prays for judgment against the Defendant, Steve Jeremias, in an amount sufficient to satisfy jurisdictional requirements and other relief the Court deems just and proper, including all relief authorized by Section 3-602 of the Nursing Home Care Act, and costs of suit. Plaintiff demands trial by jury.

## <u>COUNT IV—STEVE JEREMIAS</u><br><u>(WRONGFUL DEATH)</u>

1. Plaintiff brings this Count pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1.

2. That on or about January 21, 2018, and prior thereto, the Defendant, Steve Jeremias, owned, possessed, operated, managed, maintained, and controlled and/or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through their agents, servants and employees, certain premises which included a certain facility and facility staff located at approximately 1136 N. Mill Street, City of Naperville, County of Dupage, and State of Illinois.

3. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed as a skilled care facility.

4. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicare Residents.

5. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicaid Residents.

6. At all times relevant hereto, Defendant Community Nursing & Rehab agreed that it would comply with all applicable federal and state laws, rules, and regulations governing a "nursing facility".

7. On or about November 30, 2017, Patricia Gow was admitted as a resident to Defendant Community Nursing & Rehab.

8. On or about November 30, 2017, Defendant Community Nursing & Rehab accepted Patricia Gow as a resident.

9. Patricia Gow relied on Defendant Community Nursing & Rehab for adequate and proper nursing and personal care.

10. Defendant Community Nursing & Rehab knew or should have known that Patricia Gow relied on it for adequate and proper nursing and personal care.

11. Upon admission, Patricia Gow had a medical history that included atrial fibrillation, mitral valve insufficiency, pulmonary embolism, pulmonary hypertension, hypertension, stage 3 chronic kidney disease, COPD, emphysema, osteoarthritis, status post bilateral total knee arthroplasty, anemia, sigmoid colon diverticulosis, previous cholecystectomy, history of previous resection of skin cancer, biventricular systolic dysfunction with history of acute and chronic biventricular systolic heart failure.

12. Defendant Community Nursing & Rehab knew or should have known of Patricia Gow's medical history when it accepted her as a resident to the facility, as well as during her residency at the Defendant's facility.

13. At all relevant times, Defendant assessed Patricia Gow as being at risk for abuse or neglect related to her physical, medical, cognitive, or respiratory status.

14. At all relevant times, Defendant assessed Patricia Gow as being at risk for potential alteration in communication related to her respiratory status.

15. At all relevant times, Defendant assessed Patricia Gow as requiring oxygen as ordered, trach care each shift, suctioning as needed, and nebulizer treatments and other medications as ordered related to having a tracheostomy.

16. At all relevant times, Defendant knew or should have known that Patricia Gow was at risk of developing mucus plugging.

17. At all relevant times, Defendant knew or should have known that Patricia Gow required frequent suctioning.

18. At various time between December 1, 2017 and January 21, 2018, Defendant failed to provide Patricia Gow with medications as ordered, including acetylcysteine, albuterol sulfate, budesonide suspension, and Hyper-sal.

19. On or about December 12, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

20. On or about December 18, 2017, Patricia Gow was decannulated.

21. On or about December 18, 2017, one of Defendant's CNAs found Patricia Gow short of breath and coughing thick green/tan secretions from her trach. At this time, she was suctioned, Ambu-bagged, and re-cannulated.

22. On or about December 18, 2017, Patricia Gow developed respiratory distress due to mucous secretions occluding her trachea after decannulation.

23. On or about December 19, 2017, Patricia Gow experienced labored breathing and dropping O2 saturations. At this time, she was bagged again and her trach was upsized to Shilley #6, cuffed.

24. On or about December 22, 2017, Patricia Gow was diagnosed with bilateral pneumonia and placed on Augmentin.

25. On or about December 27, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

26. On or about December 28, 2017, Patricia Gow was desaturating. At this time, she was bagged and suctioned with a small amount of thick secretions.

27. On or about December 28, 2017, Patricia Gow experienced acute dyspnea with hypoxemia due to mucous plugging, and her trach tube was changed to a cuffed tube due to continued labored breathing.

28. On or about December 28, 2017, Patricia Gow experienced another episode of respiratory distress including desaturation during bedside care. At this time, she was bagged and suctioned.

29. On or about December 29, 2017, Patricia Gow experienced labored breathing. At this time, she was bagged and suctioned with tan/yellow thick secretions.

30. On or about December 30, 2017, Patricia Gow was transferred via ambulance to Edward Hospital related to thick secretions and recent episodes of desaturation, where she was diagnosed as suffering from dyspnea/acute on chronic hypoxic respiratory failure due to mucus plugging and fluid overload.

31. On or about January 6, 2018, Patricia Gow was readmitted to Defendant's facility.

32. On or about January 12, 2018, Patricia Gow was diagnosed as suffering from right acute parotitis/sialadenitis of right parotid gland.

33. On or about January 15, 2018, Patricia Gow's trach was downsized to Bivona #4, cuffless.

34. On or about January 16, 2018, Defendant observed Patricia Gow with copious thin white, blood-tinged secretions from her trach.

35. Between January 16, 2018 and January 21, 2018, Defendant did not note any issues with Patricia Gow's trach and/or respiratory status.

36. On or about January 21, 2018, Patricia Gow was found pulseless at Defendant's facility and CPR was initiated.

37. On or about January 21, 2018, Patricia Gow was transferred via ambulance to Edward Hospital.

38. On February 1, 2018, Patricia Gow died.

39. Defendant had a duty to implement care plans to address Patricia Gow's risk for respiratory distress.

40. Defendant had a duty to provide Patricia Gow with frequent suctioning.

41. Defendant had a duty to assess Patricia Gow's respiratory status.

42. Defendant had a duty to monitor Patricia Gow for signs and symptoms of respiratory distress.

43. Defendant had a duty to monitor Patricia Gow's trach tube for signs of mucous plugging.

44. Defendant had a duty to ensure Patricia Gow received adequate hydration.

45. Defendant had a duty to update Patricia Gow's care plan when it noted a significant change in her condition.

46. Defendant had a duty to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions.

47. Defendant had a duty to ensure Patricia Gow was properly and accurately assessed while she was a resident.

48. Defendant had a duty to conduct a functional capacity assessment of Patricia Gow initially and periodically.

49. Defendant had a duty to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

50. Defendant had a duty to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

51. Defendant had a duty to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs.

52. Defendant had a duty to ensure Patricia Gow was not subject to neglect while she was a resident.

53. Defendant had a duty to provide Patricia Gow with adequate and properly supervised nursing and personal care.

54. Defendant had a duty to have written policies and procedures governing all services provided by the facility.

55. Defendant had a duty to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow.

56. Defendant had a duty to notify Patricia Gow's physician of any accident, injury, or significant change in her condition.

57. Defendant had a duty to administer Patricia Gow's medications and/or treatments properly.

58. Defendant had a duty to follow the orders of Patricia Gow's physician.

59. Defendant had a duty to provide sufficient staff to meet the needs of its residents, including Patricia Gow.

60. Defendant had a duty to keep accurate records concerning the care and treatment of Patricia Gow.

61. Notwithstanding its duties during the period of Patricia Gow's residency at Defendant Community Nursing and Rehab's skilled nursing facility, the Defendant Steve Jeremias, by its officers, agents, employees, and staff, violated the provisions of 210 ILCS 45/2-107 when it permitted conditions to exist thereby allowing one or more of the following negligent acts and/or omissions and/or violations of the standard of care:

   a. Failed to implement care plans to address Patricia Gow's risk for respiratory distress;

   b. Failed to provide Patricia Gow with frequent suctioning;

   c. Failed to assess Patricia Gow's respiratory status;

   d. Failed to monitor Patricia Gow for signs and symptoms of respiratory distress;

   e. Failed to monitor Patricia Gow's trach tube for signs of mucus plugging;

   f. Failed to ensure Patricia Gow received adequate hydration;
   g. Failed to update Patricia Gow's care plan when it noted a significant change in her condition;

   h. Failed to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions;

   i. Failed to ensure Patricia Gow was properly and accurately assessed while she was a resident;

   j. Failed to to conduct a functional capacity assessment of Patricia Gow initially and periodically;

   k. Failed to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

   l. Failed to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

   m. Failed to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs;

   n. Failed to ensure Patricia Gow was not subject to neglect while she was a resident;

   o. Failed to provide Patricia Gow with adequate and properly supervised nursing and personal care;

    p.   Failed to have written policies and procedures governing all services provided by the facility;

    q.   Failed to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow;

    r.   Failed to notify Patricia Gow's physician of any accident, injury, or significant change in her condition;

    s.   Failed to administer Patricia Gow's medications and/or treatments properly;

    t.   Failed to follow the orders of Patricia Gow's physician;

    u.   Failed to provide sufficient staff to meet the needs of its residents, including Patricia Gow;

    v.   Failed to keep accurate records concerning the care and treatment of Patricia Gow;

    w.   Lacked policies and procedures to address the proper intervention and care for a resident at risk for mucus plugging;

    x.   Lacked policies and procedures to address to proper intervention and care for a resident at risk for respiratory distress;

    y.   Facility administration failed to effectively administer the facility in order for Patricia Gow to attain and/or maintain her highest practicable well-being;

    z.   Facility administration failed to adequately monitor, coordinate, and evaluate Patricia Gow's care;

    aa.  Facility administration failed to properly manage Patricia Gow's care.

62. Patricia Gow's next of kin are as follows:
    Gary Gow, adult son
    Walter Gow, adult son
    David Gow, adult son
    Alan Gow, adult son

63. As a direct and proximate result of one or more of the Defendant Steve Jeremias' negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home owner and/or operator, Patricia Gow suffered from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which subsequently caused and/or contributed to her death.

64. As a direct and proximate result thereof, Patricia Gow's next of kin suffered great losses of pecuniary and personal nature, including the loss of companionship and society as a result of Patricia Gow's death.

WHEREFORE, the Plaintiff, Gary Gow, as Independent Administrator of the Estate of Patricia Gow, deceased, prays for judgment against the Defendant, Steve Jeremias, in an amount sufficient to satisfy jurisdictional requirements and other relief the Court deems just and proper. Plaintiff demands trial by jury.

## COUNT V—MARK WELDLER
## (NEGLIGENCE)

1. That on or about January 21, 2018, and prior thereto, the Defendant, Mark Weldler, owned, possessed, operated, managed, maintained, and controlled and/or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through their agents, servants and employees, certain premises which included a certain facility and facility staff located at approximately 1136 N. Mill Street, City of Naperville, County of Dupage, and State of Illinois.

2. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed as a skilled care facility.

3. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicare Residents.

4. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicaid Residents.

5. At all times relevant hereto, Defendant Community Nursing & Rehab agreed that it would comply with all applicable federal and state laws, rules, and regulations governing a "nursing facility".

6. On or about November 30, 2017, Patricia Gow was admitted as a resident to Defendant Community Nursing & Rehab.

7. On or about November 30, 2017, Defendant Community Nursing & Rehab accepted Patricia Gow as a resident.

8. Patricia Gow relied on Defendant Community Nursing & Rehab for adequate and proper nursing and personal care.

9. Defendant Community Nursing & Rehab knew or should have known that Patricia Gow relied on it for adequate and proper nursing and personal care.

10. Upon admission, Patricia Gow had a medical history that included atrial fibrillation, mitral valve insufficiency, pulmonary embolism, pulmonary hypertension, hypertension,

stage 3 chronic kidney disease, COPD, emphysema, osteoarthritis, status post bilateral total knee arthroplasty, anemia, sigmoid colon diverticulosis, previous cholecystectomy, history of previous resection of skin cancer, biventricular systolic dysfunction with history of acute and chronic biventricular systolic heart failure.

11. Defendant Community Nursing & Rehab knew or should have known of Patricia Gow's medical history when it accepted her as a resident to the facility, as well as during her residency at the Defendant's facility.

12. At all relevant times, Defendant assessed Patricia Gow as being at risk for abuse or neglect related to her physical, medical, cognitive, or respiratory status.

13. At all relevant times, Defendant assessed Patricia Gow as being at risk for potential alteration in communication related to her respiratory status.

14. At all relevant times, Defendant assessed Patricia Gow as requiring oxygen as ordered, trach care each shift, suctioning as needed, and nebulizer treatments and other medications as ordered related to having a tracheostomy.

15. At all relevant times, Defendant knew or should have known that Patricia Gow was at risk of developing mucus plugging.

16. At all relevant times, Defendant knew or should have known that Patricia Gow required frequent suctioning.

17. At various time between December 1, 2017 and January 21, 2018, Defendant failed to provide Patricia Gow with medications as ordered, including acetylcysteine, albuterol sulfate, budesonide suspension, and Hyper-sal.

18. On or about December 12, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

19. On or about December 18, 2017, Patricia Gow was decannulated.

20. On or about December 18, 2017, one of Defendant's CNAs found Patricia Gow short of breath and coughing thick green/tan secretions from her trach. At this time, she was suctioned, Ambu-bagged, and re-cannulated.

21. On or about December 18, 2017, Patricia Gow developed respiratory distress due to mucous secretions occluding her trachea after decannulation.

22. On or about December 19, 2017, Patricia Gow experienced labored breathing and dropping O2 saturations. At this time, she was bagged again and her trach was upsized to Shilley #6, cuffed.

23. On or about December 22, 2017, Patricia Gow was diagnosed with bilateral pneumonia and placed on Augmentin.

24. On or about December 27, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

25. On or about December 28, 2017, Patricia Gow was desaturating. At this time, she was bagged and suctioned with a small amount of thick secretions.

26. On or about December 28, 2017, Patricia Gow experienced acute dyspnea with hypoxemia due to mucous plugging, and her trach tube was changed to a cuffed tube due to continued labored breathing.

27. On or about December 28, 2017, Patricia Gow experienced another episode of respiratory distress including desaturation during bedside care. At this time, she was bagged and suctioned.

28. On or about December 29, 2017, Patricia Gow experienced labored breathing. At this time, she was bagged and suctioned with tan/yellow thick secretions.

29. On or about December 30, 2017, Patricia Gow was transferred via ambulance to Edward Hospital related to thick secretions and recent episodes of desaturation, where she was diagnosed as suffering from dyspnea/acute on chronic hypoxic respiratory failure due to mucus plugging and fluid overload.

30. On or about January 6, 2018, Patricia Gow was readmitted to Defendant's facility.

31. On or about January 12, 2018, Patricia Gow was diagnosed as suffering from right acute parotitis/sialadenitis of right parotid gland.

32. On or about January 15, 2018, Patricia Gow's trach was downsized to Bivona #4, cuffless.

33. On or about January 16, 2018, Defendant observed Patricia Gow with copious thin white, blood-tinged secretions from her trach.

34. Between January 16, 2018 and January 21, 2018, Defendant did not note any issues with Patricia Gow's trach and/or respiratory status.

35. On or about January 21, 2018, Patricia Gow was found pulseless at Defendant's facility and CPR was initiated.

36. On or about January 21, 2018, Patricia Gow was transferred via ambulance to Edward Hospital.

37. On February 1, 2018, Patricia Gow died.

38. Defendant had a duty to implement care plans to address Patricia Gow's risk for respiratory distress.

39. Defendant had a duty to provide Patricia Gow with frequent suctioning.

40. Defendant had a duty to assess Patricia Gow's respiratory status.

41. Defendant had a duty to monitor Patricia Gow for signs and symptoms of respiratory distress.

42. Defendant had a duty to monitor Patricia Gow's trach tube for signs of mucous plugging.

43. Defendant had a duty to ensure Patricia Gow received adequate hydration.

44. Defendant had a duty to update Patricia Gow's care plan when it noted a significant change in her condition.

45. Defendant had a duty to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions.

46. Defendant had a duty to ensure Patricia Gow was properly and accurately assessed while she was a resident.

47. Defendant had a duty to conduct a functional capacity assessment of Patricia Gow initially and periodically.

48. Defendant had a duty to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

49. Defendant had a duty to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

50. Defendant had a duty to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs.

51. Defendant had a duty to ensure Patricia Gow was not subject to neglect while she was a resident.

52. Defendant had a duty to provide Patricia Gow with adequate and properly supervised nursing and personal care.

53. Defendant had a duty to have written policies and procedures governing all services provided by the facility.

54. Defendant had a duty to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow.

55. Defendant had a duty to notify Patricia Gow's physician of any accident, injury, or significant change in her condition.

56. Defendant had a duty to administer Patricia Gow's medications and/or treatments properly.

57. Defendant had a duty to follow the orders of Patricia Gow's physician.

58. Defendant had a duty to provide sufficient staff to meet the needs of its residents, including Patricia Gow.

59. Defendant had a duty to keep accurate records concerning the care and treatment of Patricia Gow.

60. Notwithstanding its duties during the period of Patricia Gow's residency at Defendant Community Nursing and Rehab's skilled nursing facility, the Defendant Mark Weldler, by its officers, agents, employees, and staff, violated the provisions of 210 ILCS 45/2-107 when it permitted conditions to exist thereby allowing one or more of the following negligent acts and/or omissions and/or violations of the standard of care:

    a. Failed to implement care plans to address Patricia Gow's risk for respiratory distress;

    b. Failed to provide Patricia Gow with frequent suctioning;

    c. Failed to assess Patricia Gow's respiratory status;

    d. Failed to monitor Patricia Gow for signs and symptoms of respiratory distress;

    e. Failed to monitor Patricia Gow's trach tube for signs of mucus plugging;

    f. Failed to ensure Patricia Gow received adequate hydration;

    g. Failed to update Patricia Gow's care plan when it noted a significant change in her condition;

    h. Failed to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions;

    i. Failed to ensure Patricia Gow was properly and accurately assessed while she was a resident;

    j. Failed to to conduct a functional capacity assessment of Patricia Gow initially and periodically;

k.  Failed to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

l.  Failed to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

m. Failed to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs;

n.  Failed to ensure Patricia Gow was not subject to neglect while she was a resident;

o.  Failed to provide Patricia Gow with adequate and properly supervised nursing and personal care;

p.  Failed to have written policies and procedures governing all services provided by the facility;

q.  Failed to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow;

r.  Failed to notify Patricia Gow's physician of any accident, injury, or significant change in her condition;

s.  Failed to administer Patricia Gow's medications and/or treatments properly;

t.  Failed to follow the orders of Patricia Gow's physician;

u.  Failed to provide sufficient staff to meet the needs of its residents, including Patricia Gow;

v.  Failed to keep accurate records concerning the care and treatment of Patricia Gow;

w. Lacked policies and procedures to address the proper intervention and care for a resident at risk for mucus plugging;

x.  Lacked policies and procedures to address to proper intervention and care for a resident at risk for respiratory distress;

y.  Facility administration failed to effectively administer the facility in order for Patricia Gow to attain and/or maintain her highest practicable well-being;

z.  Facility administration failed to adequately monitor, coordinate, and evaluate Patricia Gow's care;

aa. Facility administration failed to properly manage Patricia Gow's care.

61. As a direct and proximate result of one or more of the Defendant Mark Weldler's negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home owner and/or operator, Patricia Gow suffered from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which subsequently hastened her death.

62. As a direct and proximate result of one or more of the Defendant Mark Weldler's negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home owner and/or operator, Patricia Gow suffered pecuniary and personal loss including but not limited to disability, pain and suffering, loss of normal life, and expenses for medical care.

WHEREFORE, the Plaintiff, Gary Gow, as Independent Administrator of the Estate of Patricia Gow, deceased, prays for judgment against the Defendant, Mark Weldler, in an amount sufficient to satisfy jurisdictional requirements and other relief the Court deems just and proper, including all relief authorized by Section 3-602 of the Nursing Home Care Act, and costs of suit. Plaintiff demands trial by jury.

## <u>COUNT VI—MARK WELDLER</u>
### <u>(WRONGFUL DEATH)</u>

1. Plaintiff brings this Count pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1.

2. That on or about January 21, 2018, and prior thereto, the Defendant, Mark Weldler, owned, possessed, operated, managed, maintained, and controlled and/or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through their agents, servants and employees, certain premises which included a certain facility and facility staff located at approximately 1136 N. Mill Street, City of Naperville, County of Dupage, and State of Illinois.

3. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed as a skilled care facility.

4. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicare Residents.

5. At all times relevant hereto, Defendant Community Nursing & Rehab was licensed to accept Medicaid Residents.

6. At all times relevant hereto, Defendant Community Nursing & Rehab agreed that it would comply with all applicable federal and state laws, rules, and regulations governing a "nursing facility".

7. On or about November 30, 2017, Patricia Gow was admitted as a resident to Defendant Community Nursing & Rehab.

8.  On or about November 30, 2017, Defendant Community Nursing & Rehab accepted Patricia Gow as a resident.

9.  Patricia Gow relied on Defendant Community Nursing & Rehab for adequate and proper nursing and personal care.

10. Defendant Community Nursing & Rehab knew or should have known that Patricia Gow relied on it for adequate and proper nursing and personal care.

11. Upon admission, Patricia Gow had a medical history that included atrial fibrillation, mitral valve insufficiency, pulmonary embolism, pulmonary hypertension, hypertension, stage 3 chronic kidney disease, COPD, emphysema, osteoarthritis, status post bilateral total knee arthroplasty, anemia, sigmoid colon diverticulosis, previous cholecystectomy, history of previous resection of skin cancer, biventricular systolic dysfunction with history of acute and chronic biventricular systolic heart failure.

12. Defendant Community Nursing & Rehab knew or should have known of Patricia Gow's medical history when it accepted her as a resident to the facility, as well as during her residency at the Defendant's facility.

13. At all relevant times, Defendant assessed Patricia Gow as being at risk for abuse or neglect related to her physical, medical, cognitive, or respiratory status.

14. At all relevant times, Defendant assessed Patricia Gow as being at risk for potential alteration in communication related to her respiratory status.

15. At all relevant times, Defendant assessed Patricia Gow as requiring oxygen as ordered, trach care each shift, suctioning as needed, and nebulizer treatments and other medications as ordered related to having a tracheostomy.

16. At all relevant times, Defendant knew or should have known that Patricia Gow was at risk of developing mucus plugging.

17. At all relevant times, Defendant knew or should have known that Patricia Gow required frequent suctioning.

18. At various time between December 1, 2017 and January 21, 2018, Defendant failed to provide Patricia Gow with medications as ordered, including acetylcysteine, albuterol sulfate, budesonide suspension, and Hyper-sal.

19. On or about December 12, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

20. On or about December 18, 2017, Patricia Gow was decannulated.

21. On or about December 18, 2017, one of Defendant's CNAs found Patricia Gow short of breath and coughing thick green/tan secretions from her trach. At this time, she was suctioned, Ambu-bagged, and re-cannulated.

22. On or about December 18, 2017, Patricia Gow developed respiratory distress due to mucous secretions occluding her trachea after decannulation.

23. On or about December 19, 2017, Patricia Gow experienced labored breathing and dropping O2 saturations. At this time, she was bagged again and her trach was upsized to Shilley #6, cuffed.

24. On or about December 22, 2017, Patricia Gow was diagnosed with bilateral pneumonia and placed on Augmentin.

25. On or about December 27, 2017, Patricia Gow's trach was downsized to Shilley #4, cuffless.

26. On or about December 28, 2017, Patricia Gow was desaturating. At this time, she was bagged and suctioned with a small amount of thick secretions.

27. On or about December 28, 2017, Patricia Gow experienced acute dyspnea with hypoxemia due to mucous plugging, and her trach tube was changed to a cuffed tube due to continued labored breathing.

28. On or about December 28, 2017, Patricia Gow experienced another episode of respiratory distress including desaturation during bedside care. At this time, she was bagged and suctioned.

29. On or about December 29, 2017, Patricia Gow experienced labored breathing. At this time, she was bagged and suctioned with tan/yellow thick secretions.

30. On or about December 30, 2017, Patricia Gow was transferred via ambulance to Edward Hospital related to thick secretions and recent episodes of desaturation, where she was diagnosed as suffering from dyspnea/acute on chronic hypoxic respiratory failure due to mucus plugging and fluid overload.

31. On or about January 6, 2018, Patricia Gow was readmitted to Defendant's facility.

32. On or about January 12, 2018, Patricia Gow was diagnosed as suffering from right acute parotitis/sialadenitis of right parotid gland.

33. On or about January 15, 2018, Patricia Gow's trach was downsized to Bivona #4, cuffless.

34. On or about January 16, 2018, Defendant observed Patricia Gow with copious thin white, blood-tinged secretions from her trach.

35. Between January 16, 2018 and January 21, 2018, Defendant did not note any issues with Patricia Gow's trach and/or respiratory status.

36. On or about January 21, 2018, Patricia Gow was found pulseless at Defendant's facility and CPR was initiated.

37. On or about January 21, 2018, Patricia Gow was transferred via ambulance to Edward Hospital.

38. On February 1, 2018, Patricia Gow died.

39. Defendant had a duty to implement care plans to address Patricia Gow's risk for respiratory distress.

40. Defendant had a duty to provide Patricia Gow with frequent suctioning.

41. Defendant had a duty to assess Patricia Gow's respiratory status.

42. Defendant had a duty to monitor Patricia Gow for signs and symptoms of respiratory distress.

43. Defendant had a duty to monitor Patricia Gow's trach tube for signs of mucous plugging.

44. Defendant had a duty to ensure Patricia Gow received adequate hydration.

45. Defendant had a duty to update Patricia Gow's care plan when it noted a significant change in her condition.

46. Defendant had a duty to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions.

47. Defendant had a duty to ensure Patricia Gow was properly and accurately assessed while she was a resident.

48. Defendant had a duty to conduct a functional capacity assessment of Patricia Gow initially and periodically.

49. Defendant had a duty to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

50. Defendant had a duty to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

51. Defendant had a duty to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs.

52. Defendant had a duty to ensure Patricia Gow was not subject to neglect while she was a resident.

53. Defendant had a duty to provide Patricia Gow with adequate and properly supervised nursing and personal care.

54. Defendant had a duty to have written policies and procedures governing all services provided by the facility.

55. Defendant had a duty to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow.

56. Defendant had a duty to notify Patricia Gow's physician of any accident, injury, or significant change in her condition.

57. Defendant had a duty to administer Patricia Gow's medications and/or treatments properly.

58. Defendant had a duty to follow the orders of Patricia Gow's physician.

59. Defendant had a duty to provide sufficient staff to meet the needs of its residents, including Patricia Gow.

60. Defendant had a duty to keep accurate records concerning the care and treatment of Patricia Gow.

61. Notwithstanding its duties during the period of Patricia Gow's residency at Defendant Community Nursing and Rehab's skilled nursing facility, the Defendant Mark Weidler, by his officers, agents, employees, and staff, violated the provisions of 210 ILCS 45/2-107 when it permitted conditions to exist thereby allowing one or more of the following negligent acts and/or omissions and/or violations of the standard of care:

   a. Failed to implement care plans to address Patricia Gow's risk for respiratory distress;

   b. Failed to provide Patricia Gow with frequent suctioning;

   c. Failed to assess Patricia Gow's respiratory status;

   d. Failed to monitor Patricia Gow for signs and symptoms of respiratory distress;

   e. Failed to monitor Patricia Gow's trach tube for signs of mucus plugging;

   f. Failed to ensure Patricia Gow received adequate hydration;
   g. Failed to update Patricia Gow's care plan when it noted a significant change in her condition;

h. Failed to ensure Patricia Gow's daily caregivers were informed as to her care plan goals and interventions;

i. Failed to ensure Patricia Gow was properly and accurately assessed while she was a resident;

j. Failed to to conduct a functional capacity assessment of Patricia Gow initially and periodically;

k. Failed to provide the care and services necessary for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

l. Failed to have sufficient nursing staff to provide nursing and related services for Patricia Gow to attain or maintain the highest practicable physical, mental, and psychosocial well-being;

m. Failed to ensure nurses' aides were able to demonstrate competence in skills and techniques necessary to care for Patricia Gow's needs;

n. Failed to ensure Patricia Gow was not subject to neglect while she was a resident;

o. Failed to provide Patricia Gow with adequate and properly supervised nursing and personal care;

p. Failed to have written policies and procedures governing all services provided by the facility;

q. Failed to notify the Illinois Department of Public Health of any incident which has a significant effect on the health, safety, or welfare of a resident, including Patricia Gow;

r. Failed to notify Patricia Gow's physician of any accident, injury, or significant change in her condition;

s. Failed to administer Patricia Gow's medications and/or treatments properly;

t. Failed to follow the orders of Patricia Gow's physician;

u. Failed to provide sufficient staff to meet the needs of its residents, including Patricia Gow;

v. Failed to keep accurate records concerning the care and treatment of Patricia Gow;

w. Lacked policies and procedures to address the proper intervention and care for a resident at risk for mucus plugging;

x. Lacked policies and procedures to address to proper intervention and care for a resident at risk for respiratory distress;

y.  Facility administration failed to effectively administer the facility in order for Patricia Gow to attain and/or maintain her highest practicable well-being;

z.  Facility administration failed to adequately monitor, coordinate, and evaluate Patricia Gow's care;

aa. Facility administration failed to properly manage Patricia Gow's care.

62. Patricia Gow's next of kin are as follows:
Gary Gow, adult son
Walter Gow, adult son
David Gow, adult son
Alan Gow, adult son

63. As a direct and proximate result of one or more of the Defendant Mark Weldler's negligent acts, omissions, statutory violations and/or deviation(s) from the standard of care of a reasonable nursing home owner and/or operator, Patricia Gow suffered from hypoxia secondary to mucous plugging and cardiac arrest secondary to hypoxia, which subsequently caused and/or contributed to her death.

64. As a direct and proximate result thereof, Patricia Gow's next of kin suffered great losses of pecuniary and personal nature, including the loss of companionship and society as a result of Patricia Gow's death.

WHEREFORE, the Plaintiff, Gary Gow, as Independent Administrator of the Estate of Patricia Gow, deceased, prays for judgment against the Defendant, Mark Weldler, in an amount sufficient to satisfy jurisdictional requirements and other relief the Court deems just and proper. Plaintiff demands trial by jury.

*/s/Matt Cannon*

_____
Matt Cannon
**Horwitz, Horwitz, and Associates, LTD.**
25 E. Washington, Suite 900
Chicago, IL  60602
Office: (312) 372-8822
Email: matt@horwitzlaw.com

29670

STATE OF ILLINOIS        )
                                     ) SS:
COUNTY OF DUPAGE     )

## IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

GARY GOW, INDEPENDENT       )
ADMINISTRATOR OF THE ESTATE OF  )
PATRICIA GOW, DECEASED,      )
                                     )
              Plaintiff,        )
                                     )
v.                            )       NO.
                                     )
COMMUNITY NURSING &        )
REHABILITATION CENTER, LLC;    )
STEVE JEREMIAS; MARK WELDLER,   )
                                     )
                                     )
                                     )
             Defendants.  )

## SUPREME COURT RULE 222(b) AFFIDAVIT

1. The undersigned, Matt Cannon, does hereby state under oath and under penalty of perjury:

2. My name is Matt Cannon.

3. I represent the Plaintiff in the above-captioned case.

4. I have conducted an investigation into this case.

5. The Plaintiff is seeking damages in excess of $50,000.000

6. FURTHER AFFIANT SAYETH NOT

*/s/Matt Cannon*

_____

Matt Cannon

Gregg Davis, M.D., M.B.A., F.A.A.F.P.
204 Park Avenue East, Princeton, IL 61356
815-878-3534
Gedmd81952@yahoo.com

Nicole Morrison

Horwitz, Horwitz, and Associates, Ltd.

25 E. Washington, Suite 900

Chicago, IL 60602

November 6, 2019

Re: Patricia Gow, DOB 12/14/1934, DOD 02/01/2018

Dear Ms. Morrison:

I am a board-certified family physician licensed in the states of Illinois and Colorado with 36 years of clinical experience. I am currently the Chief Medical Officer of the Illinois Rural Community Care Organization, LLC, and the Medical Director of Colorado's Community Care Alliance, LLC. I have 30 years of experience as an attending physician and medical director of skilled care, long-term care, and shelter care nursing facilities. I am knowledgeable and have extensive clinical experience in caring for patients such as Ms. Gow in a nursing home, outpatient, and hospital environments. From my experience as a medical director of four nursing homes, I have a deep understanding of their clinical operations and applicable standards of care. I am knowledgeable of the standards of care of the nursing staff of skilled, long-term, and shelter care nursing facilities, having worked with nurses in the coordination of care for residents of such facilities.

I have been asked to determine whether the care and treatment provided to Patricia Gow met the applicable standards of care and if the care did fall below such standards, whether any injuries resulted from the breach of the standards. I have reviewed the following records:

1. RML Specialty Hospital records dated 10/04/2017 – 11/20/2017
2. Community Nursing and Rehabilitation Center records dated 11/30/2017 – 01/21/2018

3. Edward Hospital records dated 01/21/2018 – 02/01/2018
4. Death Certificate of Patricia Gow

The opinions expressed here are based on my review of the pertinent medical records, my education, my training, my review of the medical literature, and my knowledge of the accepted medical and nursing standards of care for the diagnoses, care, and treatment of the illnesses, injuries, and conditions involved in this claim.

I reserve the right to amend this opinion if any additional records become available.

Ms. Gow was an 82-year-old female admitted to RML Specialty Hospital on 10/04/2017 following a cardiopulmonary arrest requiring ventilatory support, intubation, tracheostomy, and PEG tube placement. She failed to tolerate extubation and was transferred on 11/30/2017 to Community Nursing and Rehabilitation Center for continued weaning from respiratory support, physical therapy, and occupational therapy. While confined at Community Nursing and Rehabilitation Center, she required frequent suctioning of her airway to clear mucus plugs from her trachea. Despite her frequent respiratory distress, the facility failed to adequately monitor her respiratory status to provide emergent relief of her obstructed airway to prevent acute respiratory failure. She was transferred to Edward Hospital on 01/21/2018 for acute respiratory failure secondary to increased endotracheal secretions. Despite ventilatory support, she expired on 02/01/2018 from hypoxia secondary to mucous plugging and a cardiac arrest secondary to hypoxia.

The standard of care for patients at risk of acute airway occlusion requires continuous direct visualization of the patient by nursing staff, continuous pulse oximetry, immediate access to endotracheal suctioning, a continuous pulse monitor, and immediate access to personnel capable of providing ventilatory support. The nursing and respiratory staff of Community Nursing and Rehabilitation Center failed to provide and recognize the need for intensive respiratory care for Ms. Gow. As the direct result of their failure to provide intensive respiratory care or transfer Ms. Gow to a facility capable of meeting her needs, Ms. Gow developed an occluded airway and acute respiratory failure on 01/21/2018.

It is my opinion that Community Nursing and Rehabilitation Center failed to adequately monitor Ms. Gow's respiratory status, provide continuous visual evaluation, provide continuous real-time pulse oximetry, provide continuous pulse monitoring, provide continuous emergent access to endotracheal suctioning, and provide continuous access to emergent ventilatory support. The nursing staff failed to recognize that Ms. Gow was at grave risk of acute respiratory failure and failed to transfer her to a facility capable of providing intensive respiratory care. Had Ms. Gow received the widely accepted standard of care, her death would have been prevented. Ms. Gow's death was directly, proximately, and causally related to the failures in the care provided by Community Nursing and Rehabilitation Center. Based on these findings, it is my opinion that there is a meritorious cause for action against Community Nursing and Rehabilitation Center.

2

Sincerely,

Gregg Davis, M.D., M.B.A., F.A.A.F. P.

29670

STATE OF ILLINOIS          )
                                  ) SS:
COUNTY OF DUPAGE     )

## IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

| | | |
|---|---|---|
| GARY GOW, INDEPENDENT | ) | |
| ADMINISTRATOR OF THE ESTATE OF | ) | |
| PATRICIA GOW, DECEASED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. |
| | ) | |
| COMMUNITY NURSING & | ) | |
| REHABILITATION CENTER, LLC; | ) | |
| STEVE JEREMIAS; MARK WELDLER, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ATTORNEY'S AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622

Affiant, Matt Cannon, has consulted and reviewed the facts of this case with a health professional who I reasonably believe:

1. Is knowledgeable in the relevant health care and medical issues, problems and types of treatment involved in this particular action;

2. Has over the last six years practiced and/or taught in the same area of health care or medicine that is at issue in this particular action;

3. Is qualified by experience or demonstrated competence in the subject of this case.

The reviewing health professional has determined in the attached written report, after a review of the medical records and other relevant materials, that there is a reasonable and meritorious cause for the filing of this action. I have concluded on the basis of the reviewing

health professional's review and consultation that there is a reasonable and meritorious cause for filing this action. This affidavit is provided pursuant to 735 ILCS 5/2-622.

FURTHER, Affiant sayeth naught.

_Matt Cannon_
Matt Cannon

Matt Cannon
**HORWITZ, HORWITZ AND ASSOCIATES, LTD.**
25 E. Washington, Suite 900
Chicago, Illinois 60602
(312) 372-8822, fax: (312) 372-1673

29670

STATE OF ILLINOIS          )
                          ) SS:
COUNTY OF DUPAGE           )

## IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

| | | |
|---|---|---|
| GARY GOW, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PATRICIA GOW, DECEASED, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO.    2019L001279 |
| COMMUNITY NURSING & REHABILITATION CENTER, LLC; STEVE JEREMIAS; MARK WELDLER, | ) ) ) ) ) | Chris Kachiroubas e-filed in the 18th Judicial Circuit Court DuPage County ENVELOPE: 7377285 2019L001279 FILEDATE: 11/15/2019 8:37 AM |
| Defendants. | ) ) | Date Submitted: 11/15/2019 8:37 AM Date Accepted: 11/15/2019 9:56 AM JK |

### JURY DEMAND

The undersigned demands a jury trial.

_Matt Cannon_ _____

Matt Cannon
**HORWITZ, HORWITZ, AND ASSOCIATES, LTD.**
25 E. Washington, Suite 900
Chicago, IL 60602
(312) 372-8822; fax: (312) 372-1673