UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

National Fire & Marine Insurance Company,

    Plaintiff,

v.

Community Nursing & Rehabilitation Center LLC and Gary Gow, Independent Administrator of the Estate of Patricia Gow,

    Defendants.

Case No. 21 C 4711

Judge Jorge L. Alonso

## Memorandum Opinion and Order

The parties' cross-motions for summary judgment are before the Court. As explained below, the Court grants National Fire & Marine Insurance Company's ("National Fire") motion for summary judgment (ECF No. 84) and denies Defendant Gary Gow's motion for summary judgment (ECF No. 79).

## Background[1]

Community Nursing & Rehabilitation Center LLC was a nursing home facility located in Naperville, Illinois, to which National Fire issued a senior care liability insurance policy (the "Policy") from July 1, 2017, to July 1, 2018. (Plaintiff's Statement of Facts ("PSOF") ¶ 6, ECF

---

[1] This background is taken from the undisputed record and viewed in the light most favorable to the non-moving party. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Gow did not respond to National Fire's statement of uncontested material facts, so those facts are deemed admitted. *See* Local Rule 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Even so, Gow's failure to file a response is not a basis for automatically granting the motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). National Fire also admits several of Gow's material facts. (*See* ECF No. 90.) The Court applies these standards in evaluating the record.

No. 85.) In relevant part, the Policy states that National Fire will pay losses and expenses that arise from:

- "a claim that was first made against, and received by, [Community Nursing] during the policy period, and reported to [National Fire], in writing, during the policy period," or

- "a potential claim that was first known about or discovered by [Community Nursing] during the policy period, and reported to [National Fire], in writing, during the policy period."

(*Id.* ¶ 7.)

The Policy defines a "claim" as "an express, written demand upon an insured for money or services as compensation for damages, including a suit"; and a "potential claim" as "an event, including an incident arising from, or in connection with, that event, which [Community Nursing] knows or reasonably should know is likely to result in a claim." (*Id.* ¶ 8.)

The Policy conditions National Fire's duty to defend or indemnify Community Nursing on Community Nursing's "cooperation with [National Fire] in the investigation, defense, and/or settlement of any matter to which this policy applies," including "assistance in securing and giving evidence" and "doing nothing to prejudice [National Fire's] ability to investigate, defend, and/or manage any matter to which this policy applies." (*Id.* ¶ 9.) It also conditions defense and indemnification on Community Nursing "forwarding, as soon as practicable and expressly subject to the reporting requirements of the applicable Insuring Clause, notice of every claim, potential claim, demand, suit, summons, or legal paper [Community Nursing] receives." (*Id.*)

The Policy further excludes from coverage "[a]ny claim or potential claim that [National Fire] was unable to timely investigate or defend due to the acts or omissions of [Community Nursing], including any resulting damages from a default judgment." (*Id.* ¶ 10.)

Patricia Gow was a resident of Community Nursing from late 2017 until January 21, 2018, when she was found pulseless and taken to a hospital. (Defendant's Statement of Facts

("DSOF") ¶¶ 2, 25–27, ECF No. 90.) Patricia Gow died on February 1, 2018. (*Id.* ¶ 27.) Defendant Gary Gow is the administrator of Patricia Gow's estate. (*Id.* ¶ 3.)

On April 12, 2018, Community Nursing received a letter from the law firm of Horwitz, Horwitz & Associates ("Horwitz") requesting the production of all records related to Patricia Gow. (*Id.* ¶ 1.[2]) The letter did not demand any money or threaten a lawsuit, and Community Nursing did not believe that Patricia Gow's death would likely result in a demand or lawsuit against it. (PSOF ¶¶ 12–13.)

On April 16, 2018, Community Nursing receptionist Katherine Bodine sent National Fire an email with the subject "Request - Patricia Gow" and attached Horwitz's letter without further explanation. (DSOF ¶ 2; PSOF ¶ 14.) On April 17, 2018, National Fire forwarded Community Nursing's email internally with the subject line "NEW LOSS – FW: Request – Patricia Gow," and marked the email with "High" importance. (DSOF ¶ 3.)

On April 20, 2018, National Fire Senior Care Claims Consultant Christina Ballester emailed Bodine and Community Nursing owner Shraga Jeremias, stating that Horwitz's letter presented insufficient information about an event to form a reasonable basis that it was a potential claim, and so National Fire did not consider it as a reportable matter, and invited Community Nursing to submit more information to indicate that Patricia Gow's death presented a potential claim. (PSOF ¶ 15.) Ballester received no response to her email. (*Id.* ¶ 16.) On May 1, 2018, Ballester sent a follow-up email to Bodine and Jeremias, marked with "high importance," reiterating that Horwitz's April 12, 2018, letter presented insufficient information to constitute a potential claim and again inviting them to submit additional information. (*Id.* ¶ 17.) Ballester

---

[2] Gow re-numbers his paragraphs partway through his statement of facts. This cited paragraph number and those that follow refer to the paragraphs in the "Default Judgment Lawsuit" section of Gow's statement of facts.

3

again received no response. (*Id.* ¶ 18.) Ballester sent another such email to Bodine and Jeremias on May 15, 2018, which likewise received no response. (*Id.* ¶¶ 19–20.) Having received no response to Ballester's emails, National Fire did not set up a claim file and deemed the matter closed. (*Id.* ¶ 20.) National Fire cancelled the Policy, effective May 22, 2017, after Community Nursing failed to pay the premium for the Policy. (*Id.* ¶ 6.)

On February 27, 2019, Community Nursing filed for Chapter 7 bankruptcy. (DSOF ¶ 7.) On November 15, 2019, Defendant Gow sued Community Nursing in Illinois state court under the Illinois Nursing Home Care Act and Illinois Wrongful Death Act for its conduct in December 2017 and January 2018, claiming that Community Nursing's negligent conduct hastened Patricia Gow's death.[3] (DSOF ¶ 5; PSOF ¶ 22.) On July 13, 2020, the bankruptcy court, on Gow's request, modified the automatic stay then in effect and allowed Gow to proceed with his litigation against Community Nursing only to the extent of applicable insurance proceeds. (PSOF ¶ 28.) On February 17, 2021, the court in that case entered a default judgment against Community Nursing due to its failure to comply with its discovery obligations. (DSOF ¶ 8; PSOF ¶ 30.) One month later, the court entered a default judgment against Community Nursing of $1 million under the Nursing Home Care Act and $2 million under the Wrongful Death Act, plus attorney's fees and expenses, resulting in a total judgment of $3,339,854.58. (PSOF ¶ 30.) Community Nursing had not informed National Fire of the lawsuit or modification of the stay in the bankruptcy proceedings, and National Fire first learned of the lawsuit and judgment upon receiving a third-party citation to discover assets from Gow on August 10, 2021. (PSOF ¶¶ 24, 29, 31.)

---

[3] The parties refer to that action as the "underlying lawsuit."

4

On September 2, 2021, National Fire filed a complaint for declaratory judgment against Community Nursing and Gow in this Court, seeking a declaration that it has no duty to defend or indemnify Community Nursing related to the underlying state-court action, including as to the default judgment entered against Community Nursing in that case. (ECF No. 1.)

On December 14, 2021, this Court entered default against Community Nursing, and the case has since continued between National Fire and Gow. (ECF No. 18.) Following discovery, the parties filed cross-motions for summary judgment regarding whether National Fire must indemnify Community Nursing for the default judgment entered against it in Gow's underlying state-court action, which the Court now considers. (ECF Nos. 79, 84.)

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Discussion

### I. Preliminary Matters

As an initial matter, Dow's filings are woefully deficient. Throughout them, Dow makes arguments without record or legal citations, evidently expecting the Court to simply take his say-so. For example, Gow's "statement of material facts" in support of his motion for summary judgment lacks record citations for most of its purported facts and includes only general citations of whole documents to support the others. (*See* ECF No. 81.); *see* Local Rule 56.1(d) ("Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation."). His briefs likewise lack proper record citations and most of his arguments point to no supporting caselaw or other legal authority. (*See* ECF Nos. 80, 89, 94); *see also* Local Rule 56.1(g) ("When addressing facts, the memorandum [of law] must cite directly to specific paragraphs in the LR 56.1 statements or responses."); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("It is not our job to do the legal research that [a party] has omitted."). These failures result in Dow waiving his undeveloped and unsupported arguments. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). However, failure to adequately respond on summary judgment is not a basis for automatically granting the motion. *Robinson*, 1 F.4th at 483. Rather, the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond*, 442 F.3d at 608. Accordingly, the Court considers the merits of the parties' disputes.

## II.     "Claim" or "Potential Claim"

National Fire argues that Community Nursing did not report a "claim" or "potential claim" as defined in the Policy when it forwarded Horwitz's April 12, 2018, letter, which requested various records but did not demand money or threaten potential legal action against Community Nursing. Gow responds that Community Nursing did report a potential claim to National Fire because Horwitz's letter was a "legal document" that implied a potential action and National Fire itself failed to investigate the matter further.

Gow offers no legal basis for his arguments, and the record does not support them either. National Fire points to evidence that records requests like that sent by Horwitz could be made not as a prelude to future litigation against Community Nursing, but in the context of probate proceedings, family disputes, insurance issues, or a lawsuit against a third party. Horwitz's letter did not demand money, threaten litigation, or identify a specific event that its request related to—it merely requested all records related to Patricia Gow. Horwitz's letter thus did not indicate what further purpose it served or whether it might trigger National Fire's indemnification obligations as a potential claim.

After receiving Horwitz's letter from Community Nursing, National Fire made multiple attempts to get more information to determine whether it presented a potential claim, which belies Gow's unsupported claim that National Fire failed to properly investigate the matter. Community Nursing did not respond—if it had, perhaps it would have provided information giving rise to a claim or potential claim. But the letter from Horwitz alone did not meet that threshold—by merely forwarding it to National Fire, Community Nursing thus did not report a claim or potential claim regarding Patricia Gow within the policy period and National Fire accordingly had no duty to defend or indemnify Community Nursing under the Policy. *See*

7

*Market Street Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020) (for claims-made insurance policies, "claims brought outside the policy period are not covered").Therefore, summary judgment in National Fire's favor is appropriate.

### III.  Policy Exclusions

Even had Community Nursing been reporting a potential claim when it forwarded Horwitz's records-request letter to National Fire, National Fire still would not be on the hook to Gow for the underlying default judgment against Community Nursing because Community Nursing neither cooperated with National Fire nor timely notified National Fire of the proceedings leading up to the default judgment against Community Nursing. Gow does not meaningfully rebut this—he does not dispute the relevant facts and cites nothing to support his arguments that Community Nursing adequately cooperated.

To obtain coverage and indemnification, the Policy required Community Nursing to cooperate with National Fire in the investigation and defense of a claim or potential claim, including "assistance in securing and giving evidence" and "doing nothing to prejudice [National Fire's] ability to investigate, defend, and/or manage" it. It also required Community Nursing to forward "notice of every claim, potential claim, demand, suit, summons, or legal paper" it received. Community Nursing did none of this. It did not respond to National Fire's multiple requests for more information about Patricia Gow and Horwitz's letter, and it did not inform National Fire of any of the relevant proceedings—National Fire did not learn of them until after they had concluded and resulted in a default judgment against Community Nursing. Community Nursing thus did not meet its own reporting and cooperation obligations under the Policy, ending National Fire's duty to defend and indemnify Community Nursing even had it been presented with a claim or potential claim in April 2017. Relatedly, under the Policy, Community Nursing's

conduct meant that National Fire could not timely investigate or defend Gow's claim against Community Nursing, "including any resulting damages from a default judgment," and so National Fire need not indemnify Community Nursing for the default judgment entered against it. Accordingly, even if Community Nursing's email to National Fire in April 2017 constituted a potential claim (though it did not), National Fire still would not be obligated to defend or indemnify Community Nursing due to the Policy provisions requiring Community Nursing to cooperate with National Fire in its investigation and defense and to notify it of the relevant proceedings, and excluding from coverage circumstances where National Fire could not timely investigate and defend a claim or potential claim due to Community Nursing's acts or omissions (which clearly was triggered here). *See Emp'rs Ins. of Wausau v. James McHugh Const. Co.*, 144 F.3d 1097, 1105 (7th Cir. 1998) (agreeing "that any condition in the policy requiring cooperation on the part of the insured is one of great importance and its purpose should be observed" and stating that standard cooperating clauses require the insured to, among other things, "provide relevant records and make a reasonable reconstruction of the events surrounding a claim; attend depositions and other legal proceedings; . . . and attend the trial or hearing on the matter" (cleaned up)); *Hanover Ins. Co. v. R.W. Dunteman Co.*, 446 F. Supp. 3d 336, 348 (N.D. Ill. 2020) ("Courts strictly construe notice requirements in claims-made policies and view notice requirements as valid conditions precedent."); *Bradley Hotel Corp. v. Aspen Speciality Ins. Co.*, 19 F.4th 1002, 1006–07 (7th Cir. 2021) ("Exclusions are read narrowly and apply only if their application is clear and free from doubt." (internal quotation marks and citation omitted)). Summary judgment in National Fire's favor thus is appropriate on this basis as well.

## Conclusion

The Court grants National Fire's motion for summary judgment (ECF No. 84), denies Gow's motion for summary judgment (ECF No. 79), and enters summary judgment for National Fire and against Gow. The Court declares that National Fire has no duty to defend or indemnify Community Nursing under the Policy regarding the underlying lawsuit in the Eighteenth Judicial District, DuPage County, Illinois, captioned *Gow v. Community Nursing & Rehabilitation Center, LLC*, No. 2019-L-001279, including the default judgment entered against Community Nursing in that lawsuit. Civil case terminated.

**SO ORDERED.**  **ENTERED: June 6, 2024**

_____
**HON. JORGE ALONSO**
**United States District Judge**